Eugene DuPONT III, Plaintiff,

v.

Edward J. BRADY and Brady & Tarpey, P.C., Defendants.

No. 85Civ.5297(LBS).

United States District Court, S.D. New York.

Nov. 3, 1986.

Schoeman, Marsh, Updike & Welt, New York City, for plaintiff; Michael E. Schoeman, of counsel.

L'Abbate & Balkan, Garden City, N.Y., for defendants; Anthony P. Colavita, Robert A. Rosenfeld, of counsel.

## OPINION

SAND, District Judge.

Plaintiff Eugene duPont III commenced this action against Edward J. Brady and Brady & Tarpey, P.C., alleging violations of the federal securities laws, 15 U.S.C. § 78j(b) (1982); 17 C.F.R. § 240.10b–5 (1986), and New York's Martin Act, N.Y. Gen.Bus.Law § 352–c (McKinney 1984), as well as common law fraud and attorney malpractice. DuPont claims that Brady and Brady's law firm defrauded their client, duPont, by concealing a conflict of interest and misrepresenting supposed tax benefits in connection with duPont's investment in the Kenona Coal Program. After a bench trial, the following constitutes our findings of fact and conclusion of law that plaintiff has failed to sustain the burden of proof with respect to any of the four counts.

## I. UNDISPUTED FACTS

The following facts are not in dispute in this litigation. Defendant Brady, a resident of New York, at all times relevant to this action, has been a shareholder of, and lawyer associated with defendant Brady & Tarpey, P.C. ("B & T"), a New York corporation. Brady was plaintiff duPont's personal lawyer from 1956 to 1980, rendering services which included advice as to tax matters. DuPont is a resident of Florida. Over the course of their relationship, duPont, aided by Brady, purchased a variety of investments, several of which he used as tax shelters.

In late 1979, Brady and B & T advised duPont that in their opinion, an investment in the Kenona Coal Program would provide duPont with a valid federal tax deduction. DuPont purchased three limited partnership units in Kenona for a total of $75,000 and in addition made an optional capital contribution to Kenona of $225,000. B & T received commissions from the Kenona promoters with respect to this sale (fifteen percent of $75,000), as well as legal fees for Brady's services. DuPont claimed a $300,000 deduction in his 1979 federal income tax return for his investment in Kenona.

Kenona never engaged in coal mining, and duPont's investment in Kenona is worthless. In June 1983, several individuals were convicted of securities fraud and other crimes in connection with the offering of interests in coal mining ventures, including Kenona. In April 1985, the Internal Revenue Service (IRS) disallowed duPont's $300,000 deduction, claiming a deficiency of $191,645. In April 1986, duPont and the IRS stipulated that the deficiency in respect of 1979 was $140,513.

## II. COURT'S FINDINGS OF FACT

The evidence establishes that in the course of Brady's twenty-five year representation of duPont, Brady handled a variety of legal matters for duPont and served as trustee on a number of trusts established by duPont. During this time, duPont frequently sought investments which were motivated primarily by the tax savings they could provide and apprised Brady of several such investments himself. In fact, one of Brady's main functions for duPont was to analyze duPont's tax planning schemes.

For instance, Brady testified without contradiction that duPont presented Brady with, *inter alia*, proposals converting two

safaris that duPont took with his wife into charitable deductions, and the concept of building a 40–acre lake behind his home, which by way of a joint venture, duPont converted into a tax loss. Other comparable tax schemes that duPont brought to Brady on duPont's own behalf involved shielding income behind farm investments, real estate, and a partnership that duPont created to write a book about his brother. Moreover, in response to duPont's requests, Brady would advise duPont on the availability of tax shelter investments, which prior to 1979, resulted in duPont's investment in two limited partnerships. These investments provided duPont with tax deductions over a period of years.

In late 1979, during a meeting in which duPont was present, duPont's investment advisors at the Southern National Bank in Houston informed Brady that duPont had a potential tax exposure in excess of his ability to pay. Brady advised duPont that this tax exposure required him to shelter at least $300,000 worth of income, and that a tax shelter investment of that magnitude should be found. Although the evidence conflicts as to whether Brady mentioned the Kenona Coal Program specifically as a possible investment at this meeting, it appears that Brady did indicate that he "thought" a tax shelter investment "would be deductible." DuPont asked no further question about the potential investment at this meeting or at any other time.

Pursuant to this meeting, Brady asked Daniel Gaven, an attorney in Brady's firm, to investigate the availability of a tax shelter for duPont. B & T were then dealing with a number of tax shelter promoters, some of whom provided fees or commissions to B & T upon investment by B & T clients. Gaven and Brady found two potential investments for duPont, both of which would have provided B & T with a commission. They determined that of the two, the Kenona Coal Program—a carbon copy of other coal programs that B & T had already reviewed—would be better suited to plaintiff's financial needs.

According to the Kenona Program's private placement memoranda, investors, who became Kenona's limited partners, could obtain under the existing law deductions of up to four times the amount of their cash investments, if the investors furnished recourse notes for the balance. The tax shelter was made up of two elements. First, the recourse notes were to fund an "optional capital contribution" to an "insurance reserve fund" designed to protect Kenona's general partner against accident claims to the extent they exceeded the highest coal mining accident judgment ever recorded. The investor would be required to pay on the recourse note only in the remote event that a tort judgment against the partnership actually exceeded this amount, thus requiring use of the insurance reserve fund. At any time prior to use of this fund, investors could voluntarily withdraw their optional, non-cash capital contributions. However, while an investor's optional capital contribution remained in the insurance reserve fund, the combination of this capital contribution and the cash contribution totaled the investor's basis in the program.

The second element of the shelter provided the vehicle—a minimum annual royalty payment—by which an investor sustained a deductible loss for the tax year 1979 up to the amount of his basis in the investment. The program contemplated a deduction in 1979 for a full year of minimum annual royalties even though operations were not to begin until November 1979. Since the partnership had no income in the short year 1979, the minimum royalty payment (financed primarily out of nonrecourse notes that the partnership would pay only if the mine produced coal) generated a loss.

Kenona's private placement memoranda contained a favorable tax opinion prepared by Mirrer, Lerner & Ryan, P.C. (the Mirrer firm). However, plaintiff's expert witness at trial testified, and the Court finds, that based on the law as it existed in 1979, no reasonable and experienced tax lawyer could have issued a favorable opinion on either the deductibility of the optional capital contribution (based on the "at risk"

rule) or the annual minimum royalty (because it would be paid only if there was actual production from the mine).

The evidence produced at trial demonstrates that Gaven investigated Kenona and several other identical coal programs by reviewing the private placement memoranda and by conducting a limited review of the pertinent legal authority. He also spoke with Raymond Mirrer (the author of Kenona's tax opinion) and Michael Donoghue (who was involved with the promotion of Kenona) regarding the deductibility of an investment in the tax shelters. Gaven's investigation of Mirrer's credentials was limited to ascertaining that he was listed in the Martindale Hubbell directory. Based on his discussion with Mirrer, Gaven believed and reported to Brady that while the IRS was more than likely to deny a deduction for programs like Kenona Coal, the tax court would probably uphold it based on the at risk provisions of the tax laws.

Brady, based on his discussions with Gaven, similarly believed that the Kenona Coal Program investment would ultimately prove to be deductible. Even though the tax deduction was "speculative," Tr. at 44, in that the specific mechanism had not been tested in tax court, there was no statute, regulation, or case law in 1979 that flatly disallowed the deductions contemplated here. Furthermore, a number of coal programs utilized similar provisions to obtain tax advantages under the prevailing law in 1979. Gaven testified that Brady felt assured by the favorable view taken by the firm actually responsible for the tax opinion. Furthermore, Brady thought the insurance reserve fund so "at risk" that he asked Gaven to inquire into the availability of additional insurance to cover escalating damage awards. Based on this evidence, the Court finds that even though it may have been unreasonable for the Mirrer firm actually to render a favorable tax opinion in connection with the Kenona Coal Program, Brady's opinion, based in large part on the material provided him, was colorable, and genuinely held.

Following Brady's decision that Kenona was a program suited to duPont's needs, Gaven sent the Kenona placement materials to duPont. DuPont testified at trial that he read no portion of the memorandum or the tax opinion contained therein before returning the signed papers to B & T. DuPont thus never read and was never referred to the statement buried within the placement materials, disclosing that the "Fees to Professional Advisors of Investors and to Persons Introducing Investors to the Partnership" would be fifteen percent. Among the subscription documents returned to B & T were documents evidencing purchase of three Kenona partnership units for $75,000, an optional capital contribution to Kenona of $225,000 and a promissory note evidencing borrowing by duPont to fund the optional capital contribution. At no time prior to the execution of these documents did Brady otherwise inform duPont that B & T was to receive the fifteen percent commission from duPont's investment in Kenona. Furthermore, Brady also failed to reveal that despite his belief that a deduction by duPont of $300,000 for the Kenona investment would ultimately be held deductible by the tax court, he also believed there was a significant risk—indeed, a likelihood—that the deduction would be challenged or disallowed initially by the IRS.

Brady prepared duPont's 1979 federal tax return in which duPont declared a $300,000 deduction for his investment in Kenona. The IRS disallowed the deduction in 1985, and in 1986, the tax court entered an order reflecting a settlement between duPont and the IRS, setting the 1979 deficiency at $140,513. Pursuant to this settlement, the IRS allowed duPont's deduction for his $75,000 cash investment in Kenona, but disallowed the deduction for the leveraged portion of his investment. The attorney-client relationship between Brady and duPont had terminated earlier, in 1980, for reasons totally unrelated to this transaction. Brady, as trustee of a trust established by duPont, refused duPont's request to invade the principal, which led to a dis-

pute between the parties and plaintiff's retention of new counsel.

## III. CONCLUSIONS OF LAW

This Court finds that with respect to all four counts alleged, plaintiff has failed to establish by a preponderance of the evidence that he relied to his detriment on any omissions or misrepresentations that defendant Brady made in connection with plaintiff's investment into the Kenona Coal Program.

### A. *Rule 10b–5 Liability*

■ Plaintiff alleges a violation of section 10(b) of the Securities Exchange Act of 1934. 15 U.S.C. § 78j(b) (1982); 17 C.F.R. § 240.10b–5 (1986). That section requires the plaintiff to show in connection with the purchase or sale of securities, that defendant, acting with scienter, made a false material representation or omitted to disclose material information, and that plaintiff's reliance on defendant's action caused him injury. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass,* 754 F.2d 57, 61 (2d Cir.1985). The Supreme Court has defined the standard for materiality as "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder," or "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976).

### 1. *Material Omissions*

■ It is undisputed that the Kenona Coal interest purchased by duPont was a security falling under the federal securities act. Furthermore, the evidence clearly shows that irrespective of whether or not Brady believed that the tax court would ultimately find the deduction claimed by duPont legitimate, Brady omitted material information when neither he nor his associ-ate Gaven disclosed to their client their understanding that the IRS might well disallow the deduction prior to tax court review.

■ Similarly, the Court finds that Brady's failure to disclose B & T's fifteen percent commission was a material omission. Defendant's argument that liability should be defeated by charging plaintiff with knowledge of the fee disclosure contained in plaintiff's placement materials is unpersuasive. The Court recognizes that under the federal securities laws, sophisticated investors may not intentionally refuse to investigate the information available to them, and that knowledge of such material may in certain cases be imputed to them. *See Mallis v. Banker's Trust Co.,* 615 F.2d 68, 78–79 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981) (rejects traditional due diligence negligence standard and holds that plaintiff's burden is to negate recklessness when defendant puts that in issue); *Scarfarotti v. Bache & Co., Inc.,* 438 F.Supp. 199, 203 (S.D.N.Y.1977); *see also Quintel Corp., N.V. v. Citibank, N.A.,* 596 F.Supp. 797, 801–02 (S.D.N.Y.1984) (investor's sophistication is relevant to adequacy of disclosure).

■ However, the Court finds that irrespective of whether duPont is held to be a sophisticated investor, the disclosure in the placement papers, which did not specifically identify the fee recipients, was so ambiguous that it failed to indicate effectively whether Brady or his firm fell within its breadth. Thus, duPont's failure to read the disclosure does not cure Brady's failure to effectively communicate the fee arrangement to his client. This conclusion is buttressed by the Court's finding that based on the length of their relationship and Brady's knowledge of the manner in which duPont approached his investments, Brady should have known that duPont would not read the placement materials, despite duPont's representations to the contrary in the subscription agreement. *See Zissu v. Bear, Stearns & Co.,* 627 F.Supp. 687 (S.D. N.Y.1986) (Weinfeld, J.).

### 2. Scienter

The Court finds that with regard to his material omissions, defendant had sufficient scienter for liability under section 10(b) of the 1934 Act. In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), the Supreme Court made clear that negligence is insufficient to satisfy the scienter element of a Rule 10b–5 claim. While the Court left open whether recklessness is sufficient for civil liability under the Rule, *id.* at 193–94 n. 12, 96 S.Ct. at 1381 n. 12, the Second Circuit, both before and following *Hochfelder*, has held that a showing of recklessness satisfies the scienter requirement at least where there exists a fiduciary duty to disclose. *See, e.g., Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 44–47 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed. 698 (1978); *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1306 & n. 98 (2d Cir.1973).

■ However, the conduct covered by the term recklessness is not easy to define, given that recklessness standards of varying strictness have been applied in this Circuit. *See* cases cited in *Steinberg v. Carey*, 439 F.Supp. 1233, 1238–39 (S.D.N.Y. 1977); *Greene v. Emersons, Ltd.*, 86 F.R.D. 66, 71–73 (S.D.N.Y.1980), *aff'd sub nom., Kenneth Leventhal & Co. v. Joyner Wholesale Co.*, 736 F.2d 29 (2d Cir.1984). The Court finds the standard articulated in *Cohen v. Franchard Corp.*, 478 F.2d 115, 123 (2d Cir.), *cert. denied*, 414 U.S. 857, 94 S.Ct. 161, 38 L.Ed.2d 106 (1973) most applicable to this case. The *Cohen* court said:

> The standard for determining liability under Rule 10b–5 essentially is whether plaintiff has established that defendant either knew the material facts that were misstated or omitted and should have realized their significance, or failed or refused to ascertain and disclose such facts when they were readily available to him and he had reasonable grounds to believe that they existed.... It is not enough for plaintiff to show that defendant failed to detect certain material facts when he had no reason to suspect their existence.

*Id.* at 123; *cf., e.g., Rolf*, 570 F.2d at 47 (reckless conduct is conduct which is highly unreasonable and which represents an extreme departure from ordinary care); *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 126 (S.D.N.Y.1974), *aff'd in relevant part*, 540 F.2d 27 (2d Cir.1976) (willful, deliberate, or reckless disregard for truth that is the equivalent of knowledge). Because Brady should have realized the significance to a potential investor of both the fact of his commission and his opinion that the IRS would probably initially find the Kenona investment nondeductible, his omissions constitute reckless behavior under Rule 10b–5.

### 3. Material Misrepresentations

DuPont charges that Brady, in addition to these material omissions, also recklessly misrepresented his opinion that the Kenona investment would be deductible. However, the Court disagrees that affirmative misrepresentations were made by Brady. As discussed above, the evidence establishes that Brady honestly believed that the tax court would *ultimately* sustain the deductibility of the Kenona investment, and Brady so communicated to duPont that he thought the investment deductible. The Court finds that Brady's statement to this effect does not constitute a reckless misrepresentation of Brady's opinion or an unqualified guarantee of that result—especially in light of Brady's awareness that duPont's pattern was to actively seek investments that from a tax standpoint, can be characterized as dubious at best.

■ Under the circumstances, the Court concludes that Brady's representation of deductibility was not reckless for purposes of the federal securities laws. *See Rolf*, 570 F.2d at 47–48 (statement is reckless if made "without investigation and with utter disregard for whether there was a basis for the assertions"); *Croy v. Campbell*, 624 F.2d 709, 715 (5th Cir.1980) (mere fact that attorney made tax analysis based on information presented him was not extreme departure from standards of ordinary care).

Brady's representations simply did not rise to the level of representations "certified as true ... when knowledge there [was] none, a reckless misstatement, or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth...." *State Street Trust Co. v. Ernst,* 278 N.Y. 104, 112, 15 N.E.2d 416, 419 (1938); *see also DiRose v. PK Management Corp.,* 691 F.2d 628, 632 (2d Cir.1982), *cert. denied,* 461 U.S. 915, 103 S.Ct. 1896, 77 L.Ed.2d 285 (1983).

#### 4. Reliance

 As to Brady's omissions, it is when we look to the element of reliance—or causation—that plaintiff has failed to carry his burden of showing a violation of the securities laws. Causation is a necessary element in a private action for damages under Rule 10b–5. *Titan Group, Inc. v. Faggen,* 513 F.2d 234 (2d Cir.), *cert. denied,* 423 U.S. 840, 96 S.Ct. 70, 46 L.Ed.2d 59 (1975). In omission or nondisclosure cases, unlike instances of affirmative misrepresentation, it is impossible for the injured party to demonstrate reliance. *Id.* at 239. Therefore, positive proof of reliance is not a prerequisite to recovery. *Affiliated UTE Citizens of Utah v. United States,* 406 U.S. 128, 153, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Instead, the obligation to disclose and the withholding of a material fact establish a presumption of reliance or causation, with materiality demonstrated if the reasonable investor would have considered the facts witheld important in making his decision. *See id.* at 153–54, 92 S.Ct. at 1472; *Titan Group, Inc.,* 513 F.2d at 239.

 The Court finds this presumption of reliance rebutted here. The evidence shows that given his past practices, known to Brady, duPont would have proceeded with the acquisition of partnership shares of Kenona, irrespective of any omissions as to Brady's commission and the risk of non-deductibility. This is demonstrated by duPont's history of aggressive and comparable investing solely for tax avoidance purposes—a history which duPont pursued often on his own initiative. Coupled with duPont's inability to meet his tax liability for $300,000 of income and his resulting need to locate a tax shelter on very short notice and late in the tax year (a time at which there were apparently few suitable investments), it is apparent that the knowledge gained from the information Brady failed to communicate would not have influenced duPont's decision to invest in the Kenona Coal Program. Under these circumstances, the conclusion that duPont was willing to enter into the investment regardless of the associated tax risks is buttressed by the summary fashion in which duPont approached the entire investment, with barely a cursory inquiry into the tax risks, and according to his testimony at trial, hardly a glance at the placement materials. Because plaintiff has failed to show that defendant's actions caused him harm, duPont's claim under Rule 10b–5 must fall.

### B. Martin Act Liability

 The requisites for civil liability under the Martin Act, N.Y.Gen.Bus.Law § 352–c (McKinney 1984) are deception, materiality, reliance, and proximate damage. *See, e.g., Halle & Stieglitz v. Kolen,* Blue Sky L.Rep. (CCH) ¶ 71,435, at 68,435–36 (Sup.Ct. New York Co.1978), *aff'd,* 71 A.D.2d 554, 418 N.Y.S.2d 552 (1979). Deceptive conduct encompasses omissions as well as misrepresentations. *Id.* Although it is unclear whether scienter is an essential element of a Martin Act claim, *Eriksson v. Galvin,* 484 F.Supp. 1108, 1128 (S.D.N.Y.1980), it is certain that plaintiff must show proof of reliance in the sense of causation. *Id.* The reasons stated above with respect to plaintiff's failure to establish the requisite causal relationship required for a Rule 10b–5 claim likewise defeats plaintiff's claim under section 352–c. *See id.* at 1128.

### C. Common Law Fraud Liability

 Plaintiff's third claim for relief alleges both common law fraudulent representations and common law fraudulent con-

cealment. The elements of New York common law fraudulent representations include representation of a material existing fact, falsity, scienter, deception, and injury. *Channel Master Corp. v. Aluminum Limited Sales, Inc.*, 4 N.Y.2d 403, 407, 176 N.Y.S.2d 259, 262, 151 N.E.2d 833, 835 (1958). The elements of a cause of action for fraudulent concealment are: (1) relationship between the parties that creates a duty to disclose; (2) knowledge of the material facts by the party bound to make such disclosures; (3) nondisclosure; (4) scienter; (5) reliance; and (6) damage. *See, e.g., Leasing Service Corp. v. Broetje*, 545 F.Supp. 362, 366 (S.D.N.Y.1982).

▮▮ The Court's conclusion under Rule 10b–5 that Brady made no actionable affirmative misrepresentations to duPont as to his opinion on the deductibility of the Kenona investment dispenses with plaintiff's claim of fraudulent representations under the common law. *See Freschi v. Grand Coal Ventures*, 767 F.2d 1041, 1050 (2d Cir.1985), *vacated on other grounds*, — U.S. —, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986); *see also Kountze v. Kennedy*, 147 N.Y. 124, 129, 41 N.E. 414, 414 (1895) (misjudgment, however gross, is not fraud; misrepresentation, when believing it to be true, is not fraud); *Burgundy Basin Inn, Ltd. v. Watkins Grand Prix Corp.*, 51 A.D.2d 140, 145–46, 379 N.Y.S.2d 873, 878–80 (1976) (allegations of negligent misrepresentations as to future events will not sustain action for fraud).

▮▮ The Court finds duPont's claim of fraudulent concealment predicated on Brady's material omissions as to his fee and the risk that the deduction would be disallowed equally meritless. Not only has plaintiff failed to prove the element of reliance, as discussed in connection with plaintiff's Rule 10b–5 claim, but plaintiff has not shown that defendant acted with the requisite scienter, a standard articulated by some courts and authorities as stricter for common law fraud than for its Rule 10b–5 counterpart. *See, e.g., Ainger v. Michigan General Corp.*, 476 F.Supp. 1209, 1227–28 (S.D.N.Y.1979), *aff'd*, 632

F.2d 1025 (2d Cir.1980) (scienter includes intent to cause the other party to act in reliance); *Frigitemp Corp. v. Financial Dynamics Fund, Inc.*, 524 F.2d 275, 283 (2d Cir.1975) (common law claim must show fiduciary relationship or that defendant knew plaintiff was acting under mistaken belief); *Reno v. Bull*, 226 N.Y. 546, 551–52, 124 N.E. 144, 145 (1919) (fraud presupposes a willful purpose). *But see Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 45–46 (2d Cir.), *cert. denied*, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978) (common law recklessness standard is interpretive source of securities law); *Freschi*, 767 F.2d at 1050 (elements are same for common law and securities law fraud). Based on all of these factors, plaintiff has failed to show either common law fraudulent representations or fraudulent concealment.

### D. *Attorney Malpractice*

Plaintiff's fourth and final cause of action is for legal malpractice. DuPont claims that Brady, as duPont's fiduciary, failed to act in the utmost good faith and with due care and undivided loyalty by not disclosing his commission from duPont's Kenona investment and by not explaining the risk that the deduction would be disallowed. Plaintiff points out that these duties preclude an attorney from having personal interests antagonistic to those of the client or from obtaining personal advantage or profit out of the relationship without the knowledge and consent of the client. *Hafter v. Farkas*, 498 F.2d 587, 589 (2d Cir.1974). At the very least, the attorney must disclose to all parties the nature of the conflict and obtain consent to the continued representation. *Kelly v. Greason*, 23 N.Y.2d 368, 375–76, 296 N.Y.S.2d 937, 943–44, 244 N.E.2d 456, 460 (1968).

▮▮ An action for legal malpractice requires proof of the attorney's negligence, that the negligence was the proximate cause of the loss sustained, and proof of actual damages. *Mendoza v. Schlossman*, 87 A.D.2d 606, 606–07, 448 N.Y.S.2d 45, 46 (1982); *Marks Polarized Corp. v. Solinger & Gordon*, 124 Misc.2d 266, 267, 476 N.Y.

S.2d 743, 744 (Sup.Ct. Queens Co.1984). "If an attorney negligently or willfully withholds from his client information material to the client's decision to pursue a given course of action, or to abstain therefrom, then the attorney is liable for the client's losses suffered as a result of action taken without benefit of the undisclosed material facts." *Spector v. Mermelstein,* 361 F.Supp. 30, 39–40 (S.D.N.Y.1972), *aff'd,* 485 F.2d 474 (2d Cir.1973). The Court finds that Brady's failure to communicate the fact of his commission and the tax risk involved in the Kenona investment was negligent and a breach of his duties of due care and undivided loyalty.

██ However, as is the case with respect to each of duPont's claims, plaintiff has failed to establish by a preponderance of the evidence that Brady, by his omissions, caused duPont's loss. DuPont has failed to show that but for Brady's negligence, the result that duPont sought—a substantial tax deduction for 1979—would or could have been achieved. *See Parker, Chapin, Flattau & Klimpl v. Daelen Corp.,* 59 A.D.2d 375, 378–79, 399 N.Y.S.2d 222, 224 (1977). He has further failed to demonstrate that but for Brady's negligent omissions, he would not have invested in the Kenona Coal Program. *See Freschi v. Grand Coal Venture,* 588 F.Supp. 1257 (1984), *aff'd in relevant part,* 767 F.2d 1041 (2d Cir.1985), *vacated on other grounds,* —— U.S. ——, 106 S.Ct. 3325, 92 L.Ed.2d 731 (1986) ("but for" test is essential element of legal malpractice action in New York); *Marks Polarized,* 124 Misc.2d at 268, 476 N.Y.S.2d at 744–45 ("but for" is stringent test); *Quintel Corp., N.V. v. Citibank, N.A.,* 606 F.Supp. 898, 912 (S.D.N.Y.1985).

██ The Court further concludes that Brady was not negligent in affirmatively advising his client that in his opinion the Kenona deduction would be sustained. As stated above, the Court finds that Brady's opinion that the tax court would ultimately uphold the deduction was honestly held based on the materials and information provided him by Gaven and in the prospectus, and that no statute, regulation, or case law in 1979 specifically disallowed the contemplated deductions. Under these circumstances, where "a lawyer errs on a question not elementary or conclusively set by authority, that error is one of judgment for which he is not liable." *Parksville Mobile Modular, Inc. v. Fabricant,* 73 A.D.2d 595, 600, 422 N.Y.S.2d 710, 717 (1979) (quoting *Byrnes v. Palmer,* 18 A.D. 1, 4, 45 N.Y.S. 479, 482, *aff'd,* 160 N.Y. 699, 55 N.E. 1093 (1899)); *see also Farr v. Newman,* 14 N.Y.2d 183, 187, 250 N.Y.S.2d 272, 275, 199 N.E.2d 369, 371 (1964). Furthermore, while plaintiff offered expert opinion evidence that Mirrer, the *author* of the Kenona tax opinion, failed to meet his standard of care, plaintiff did not sustain his burden of offering comparable evidence to establish the standard of care applicable to Brady himself. He likewise did not establish that this duty was breached by the manner or extent to which Brady investigated the Kenona Coal Program. *See O'Brien v. Spuck,* 99 A.D.2d 910, 472 N.Y.S.2d 514 (1984); *Fidler v. Sullivan,* 93 A.D.2d 964, 463 N.Y.S.2d 279 (1983). For the foregoing reasons, plaintiff has failed to sustain his claim of legal malpractice.

### CONCLUSION

For the reasons stated above, plaintiff has failed to sustain his burden of proof with respect to any claims of common law fraud and attorney malpractice, or any alleged violations of the federal securities laws or New York's Martin Act. The Court finds that defendants' omissions did not cause plaintiff's investment in the Kenona Coal Program, and that defendants made no affirmative misrepresentations upon which plaintiff relied in making this investment. Accordingly, the relief sought by plaintiff is hereby denied.

SO ORDERED.