Schoeman, Marsh, Updike & Welt, New York City (Michael E. Schoeman, of counsel), for plaintiff.

L'Abbate & Balkan, Garden City, N.Y. (Anthony P. Colavita, of counsel), for defendants.

**Eugene DuPONT, III, Plaintiff,**

v.

**Edward J. BRADY and Brady & Tarpey, P.C., Defendants.**

**No. 85 Civ. 5297 (LBS).**

United States District Court, S.D. New York.

Feb. 3, 1988.

## OPINION

SAND, District Judge.

In an Opinion reported at 646 F.Supp. 1067 (S.D.N.Y.1986), this Court held that as tax adviser and attorney to duPont, Brady "omitted material information when neither he nor his associate Gaven disclosed to their client their understanding that the IRS might well disallow the deduction [taken for the Kenona Coal tax shelter] prior to tax court review." *Id.* at 1072. This Court further found that "Brady's failure to disclose B & T's [Brady's law firm] fifteen percent commission was a material omission." *Id.* at 1072. Further, this Court found that "defendant had sufficient scienter for liability under section 10(b) of the 1934 Act." *Id.* at 1073.

With respect to the issue of reliance, this Court wrote that "plaintiff has failed to carry his burden of showing a violation of

the securities laws" and further concluded that "[b]ecause plaintiff has failed to show that defendant's actions caused him harm, duPont's claim under Rule 10b–5 must fall." *Id.* at 1074.

On appeal, the Court of Appeals, 828 F.2d 75, reversed and remanded solely with respect to the issue of reliance, writing:

Once materiality and the defendant's scienter are proven, it may be safely presumed that the plaintiff's investment decision would have been influenced by knowledge of the omitted facts. The finding of materiality by its very nature establishes that the information omitted would have been considered important by investors generally. It thus will be only the unusual case in which compatible findings of materiality and nonreliance can be made. Under those circumstances, burdening plaintiffs with having to prove the generally indeterminable fact of what would have happened but for the omission would reduce the protection against fraud afforded by Section 10(b). We believe, therefore, that defendants should be made to bear the greater part of the risk of mistaken adjudications. Given the scienter finding, they are established wrongdoers, and their wrongful conduct will generally have contributed to the uncertainty about the plaintiff's likely reaction to the undisclosed information. Even defendants who have acted wrongfully, however, should not be made to pay for damage they did not cause. The presumption therefore shifts only the burden of persuasion. Because proof of nonreliance will generally be quite difficult, we perceive no reason to impose a higher burden than proof by a preponderance of evidence.

Under this analysis, which we set forth for the first time in this Circuit, the district court appears not to have allocat-

ed this burden of persuasion properly in the instant case.

*Id.* at 78.

In remanding, the Court of Appeals further noted:

Accordingly, we reverse and remand to the district court for a determination of whether the defendants proved duPont's nonreliance on their material omissions by a preponderance of the evidence. We reject duPont's contention that any finding of nonreliance upon the proper allocation of the burden of proof would be clearly erroneous. The evidence does not conclusively support either party's version, and much of the ultimate conclusion depends on credibility findings. Judge Sand is thus in no way foreclosed from holding on remand that the defendants either did or did not meet their burden of persuasion on this issue.

[Footnote omitted]. *Id.* at 79.

In this Opinion, which constitutes our findings of fact and conclusions of law, we assume familiarity with the prior opinions in this case and set forth only such facts as are relevant to the single issue on remand. Following remand, plaintiff moved to reopen the proceedings on the ground that the record had not been fully developed on the issue of reliance. The Court granted this motion and at proceedings held on January 27, 1988, both plaintiff and defendant testified.

We are satisfied, based on the evidence introduced at the January 27th hearing, that defendant has not sustained his burden of overcoming the presumption of reliance.[1]

We found in our prior Opinion (646 F.Supp. at 1070) that:

"In late 1979, during a meeting in which duPont was present, duPont's in-

---

1. This Court had understood at the prior proceedings that there was a presumption of reliance and that the burden was upon the defendant to rebut this presumption. Once the presumption is rebutted, it is no longer available to a plaintiff who must sustain the usual plaintiff's burden of proof independently of any presumption. Based on the then record the Court concluded that the presumption had been rebutted

and that plaintiff had not otherwise sustained his burden of proof. We reach a different result, not because the Court of Appeals' helpful and enlightening opinion has altered this Court's understanding of the law but rather because the present record casts the issue in an entirely new light, especially with respect to Brady's credibility.

vestment advisors at the Southern National Bank in Houston informed Brady that duPont had a potential tax exposure in excess of his ability to pay."

We are now satisfied that this was not the case. DuPont was not at such a meeting and he was not so advised.

First, we credit duPont's testimony that he was not present at the meeting in question, which testimony is corroborated by the deposition testimony of Robert J. Sweeney of the Southern National Bank.

Second, it is now clear that duPont did not have a tax exposure in excess of his ability to pay. The tax due was an installment tax payment. Pursuant to the then applicable provisions of the Internal Revenue Code (§ 6654(d)), no underpayment penalty would have been incurred if the installment payments were equal to 90 percent of the tax computed for the prior year. The income tax return for 1978 (Ex. 1) reflects a total tax due of $166,033.13. The 1979 income tax return (Ex. 2) reflects the payment of $100,000 in estimated payments. If the $100,000 had been paid prior to the Kenona investment, the estimated tax payment due would have been no more than $66,033, *less* than the $75,000 paid by duPont to participate in the Kenona tax shelter. Plaintiff contends, and the Court finds, that the $100,000 in installments had been paid prior to the Kenona investment. DuPont identifies a specific payment of $25,000 which, added to $75,000 previously paid, constituted the $100,000 in installment payments made prior to the Kenona investment. There is nothing to support defendant's contention that an installment payment may have been made after the Kenona investment.

Moreover, it is clear that duPont had sufficient funds to make the $75,000 investment in Kenona. *A fortiori*, he had the $66,033 to pay the installment tax due.

Plaintiff introduced (Ex. 3) his bank statements from the First Citrus Bank of Indian River County which reflect cash balances sufficient to cover the tax installment. Brady testified that he had no knowledge of the existence of this account or that plaintiff possessed these funds. However, the $75,000 paid for the Kenona investment came from this account. The check for the $75,000 was sent to Brady's associate, Gaven, drawn on this account.

If, as Brady claims, duPont was in a cash squeeze and was overdrawn at the Southern National Bank, the question arises as to where Brady believed duPont would obtain the $75,000 needed for Kenona. Brady testified that in a telephone conversation with duPont, Brady advised duPont that he needed $75,000 and that duPont said he would "get the money up," but that there was no discussion of how this was to be done (presumably out of duPont's dividend income) and that Brady didn't inquire. This alleged telephone conversation seems inconsistent with Brady's role as duPont's tax and financial adviser. There was no previous testimony as to this conversation and the Court does not accept as credible Brady's version of what was said or not said concerning the source of the $75,000.

The Court's belief that Brady's account of what took place is inaccurate is fortified by another aspect of his testimony.[2]

Brady testified that he had assumed that the installment due on January 15, 1980 was $200,000, not the $66,033 discussed above. He claims that he was aware of the fact that duPont had income of over $1,000,000 for the year and that his oil and tax gas shelters were diminishing. Absent a tax shelter for $300,000, he asserts he believed duPont would have been required to pay the $200,000 on January 15, 1980. This testimony (which further confirms the conclusion stated above that the $100,000 in installment payments preceded the Ken-

---

**2.** In fairness to Brady, the Court notes that his recollection of some of the relevant events seems vague and confused. It is of no moment for purposes of this proceeding whether failed memory or other circumstances give rise to the inaccuracies in his testimony. Defendant has the burden of proving by a preponderance of the evidence that the presumption of reliance has been rebutted. Regardless of the cause of the inaccuracies in his account of the events, the Court's conclusion that his testimony is inaccurate and in some respects incredible results in his failure to sustain this burden.

ona investment) is not credible. Brady was functioning as duPont's tax adviser and was presumably expert in such matters. No claim is advanced by defendant's counsel that this alleged tax conclusion had any validity.

Plaintiff reviewed at the trial each of the marginally allowable deductions he had taken and upon which this Court previously relied in citing "duPont's history of aggressive and comparable investing solely for tax avoidance purposes—a history which duPont pursued often on his own initiative." *Id.* at 1074. It appears that in many of these instances (*i.e.*, the lake, safari, farm investments and partnership to write a book about his brother) what was involved was an activity in which duPont wished to engage. Having determined that he wished to engage in these activities for their own sake, he sought to have them structured in a form which was most advantageous from a tax standpoint. Plaintiff .seeks to distinguish such activities from the Kenona investment which was not a transaction in which he wished to engage apart from tax considerations. There is some validity to this distinction; enough so to cast upon defendant a greater need to explain the risks attendant upon the investment.

Brady places considerable emphasis on the overdrawn status of the custodian account for duPont's benefit at the Southern National Bank. We find this emphasis to be overstated. The testimony indicates that regularly declared dividends from the trust's stock holdings would have redressed the overdrawn status of the custodial account, as was fully anticipated at the time. Whether or not the Southern National Bank would have made further advances to duPont was immaterial in view of his other cash resources as noted above.

The Court finds that what impelled Brady to recommend the Kenona investment was not any sense of need or urgency but rather the fact that in past years, according to Brady, duPont had sheltered 85 to 90 percent of his otherwise taxable income. This past practice made duPont a potential investor for Kenona which purported to offer a $300,000 tax shelter for a $75,000 investment. Thus, Brady who was to receive a fifteen percent commission on the investment (a fact not disclosed to duPont) saw in duPont a likely prospect for Kenona.

However, in these circumstances which involve an optional investment to avoid taxes rather than a compelled investment to meet a tax liability for which funds were lacking, one can no longer say "it is apparent that the knowledge gained from the information Brady failed to communicate would not have influenced duPont's decision to invest in the Kenona Coal program." *Id.* at 1074.

Accordingly, we find that defendant has not rebutted the presumption of reliance. Plaintiff has therefore sustained his burden of proof and prevails on his Rule 10b–5 and negligence claim based on Brady's failure to communicate the fact of his commission and the tax risk involved. *See id.* at 1076.

The parties are to advise the Court in writing within ten (10) days from the date hereof what further proceedings, if any, are necessary or appropriate for the determination of compensable damages.

SO ORDERED.