HALE HOUSE CENTER, INC., Canaan Baptist Church of Christ, Canaan Housing Development Fund, Inc., Canaan Baptist Housing Development & Preservation Fund, Harlem Interfaith Counseling Service, Harlem Churches for Community Improvement, 1389 Construction Corp. and DeLoren Richards, Plaintiffs,

v.

The FEDERAL DEPOSIT INSURANCE CORPORATION, the Comptroller of the Currency of the United States of America, and Freedom National Bank, N.A., Defendants.

No. 91 Civ. 0445(PNL).

United States District Court,
S.D. New York.

March 17, 1992.

Pope Billups & Sneed, New York City (Benjamin Sneed, of counsel), for plaintiffs.

Otto G. Obermaier, U.S. Atty., S.D. New York, New York City (Katherine A. Staton, Asst. U.S. Atty., of counsel), for defendant The Comptroller of the Currency of the U.S.

William A. Meltzer, New York City, Thomas A. Schulz, Asst. Gen. Counsel, Robert G. Clark, Senior Counsel, Thomas L. Holzman, Counsel, F.D.I.C., Washington, D.C., for defendant F.D.I.C.

LEVAL, District Judge.

Defendants Federal Deposit Insurance Corporation ("FDIC") and the Comptroller of the Currency of the United States (the "Comptroller") move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

The plaintiffs, Hale House Center, Inc., Canaan Baptist Church of Christ, Canaan Housing Development Fund, Inc., Canaan Baptist Housing Development & Preservation Fund, Interfaith Counseling Service, Harlem Churches for Community Improvement, DeLoren Richards and 1389 Construction Corporation, allegedly had deposits in Freedom National Bank ("Freedom") exceeding $100,000. In November of 1990, the Comptroller declared Freedom insolvent and appointed the FDIC as receiver for Freedom to wind up its affairs. Subsequently, plaintiffs were informed by the FDIC that they would not be able to recover the full amount of their deposits in excess of the $100,000 insured by the FDIC.

In the First Count of the Complaint, plaintiffs allege that Freedom induced the public to deposit money with it by advertising that it was an FDIC member and that money deposited with Freedom would be "insured and guaranteed" up to $100,000. Complaint ¶ 4. Plaintiffs contend that those advertisements did not state that a depositor was *not* insured by the FDIC for deposits in excess of $100,000, regardless of the number of accounts that depositor might have at Freedom or the aggregate size of that depositor's deposits. Complaint ¶¶ 5, 6. Plaintiffs contend that Freedom and FDIC had a duty to inform the public that deposits in excess of $100,000 were not insured by the FDIC. Complaint ¶ 10. Plaintiffs contend that due to the failure of Freedom and the FDIC to perform this duty, plaintiffs maintained accounts at Freedom in excess of $100,000 in the mistaken belief that their deposits were insured in full by the FDIC. Plaintiffs allege that consequently, they lost money and suffered irreparable harm when Freedom became defunct. Complaint ¶¶ 7, 8. The failure of Freedom and FDIC to inform plaintiffs of the limits of FDIC insurance coverage is alleged to constitute "fraud and deceit." Complaint ¶ 13.

In the Second Cause of Action, plaintiffs contend that the Comptroller, together with

the FDIC and Freedom, failed to warn plaintiffs of Freedom's impending closure and thus deprived them of the opportunity to withdraw their deposits while Freedom was still solvent. Complaint ¶ 14. Plaintiffs conclude by contending that the refund of less than 100% of their deposits at Freedom would "amount to fraud, and a travesty of justice and to a denial to the said plaintiffs and others of the equal protection of the law under Article 3 [sic], of the United States Constitution." Complaint ¶ 16.

After the Comptroller and the FDIC moved to dismiss, Congress enacted the Federal Deposit Insurance Corporation Improvement Act of 1991, Pub.L.No. 102–242, which included a provision for the full reimbursement of certain organizations (primarily charitable) that had banked with Freedom. At a conference on January 14, 1992, counsel for plaintiffs advised the court that the case is now moot as to all named plaintiffs except 1389 Construction Corporation, a commercial corporation that was not affected by the Comprehensive Deposit Insurance Reform and Taxpayer Protection Act of 1991.

The FDIC's and Comptroller's motions will therefore be considered with respect to the complaint of 1389 Construction Corporation.[1] The actions of the other named plaintiffs are hereby dismissed as moot.

## DISCUSSION

### I. *The Comptroller's Motion to Dismiss*

The Comptroller is the chief officer of the Office of the Comptroller of the Currency ("OCC"), a bureau within the Treasury Department charged with the administration of the National Bank Act, 12 U.S.C. §§ 1, 2. Among the Comptroller's duties,

is the obligation to assure the continued viability of national banks where possible, and the orderly and fair liquidation of any national bank which falls into insolvency. The Comptroller is to protect the interests of the United States, direct and indirect, general and specific,

---

1. Plaintiffs' counsel asserts that the action is also brought as a class action on behalf of other

similarly situated depositors whose deposits exceeded the $100,000 limit of insurance.

and is to secure an equitable distribution of bank assets to the creditors of a failed bank.

*United States v. Lemaire*, 826 F.2d 387, 390 (5th Cir.), *reh'g denied en banc*, 831 F.2d 1062 (5th Cir.1987), *cert. denied*, 485 U.S. 960, 108 S.Ct. 1223, 99 L.Ed.2d 423 (1988). In the event that the Comptroller becomes "satisfied of the insolvency of a national bank[ ]", he or she may appoint the FDIC as receiver to wind up the bank's affairs. 12 U.S.C. §§ 191, 1821(c)(2)(A)(ii). Once the FDIC is appointed as receiver, it has broad discretionary powers to resolve the insolvency. 12 U.S.C. §§ 1821(c)(2)(C)–(c)(3)(C).

Ostensibly misapprehending the role of the Comptroller (and the OCC) in the banking system, the Complaint makes allegations of facts that do not comport with what the Comptroller actually does when a bank is declared defunct. For example, the Comptroller is alleged to be "in control of the winding up proceedings regarding FREEDOM," Complaint ¶ 15, while in reality the Comptroller plays no active role in winding up a bank's affairs after it has been put into receivership. The Comptroller contends that the only claims in the Complaint that could conceivably pertain to the Comptroller are those arising from his failure to give notice to the depositors that Freedom would likely be closed. Although they have not amended the Complaint, plaintiffs' memorandum in opposition to the Comptroller's motion concedes the Comptroller's point: "[t]he action against the [Comptroller] is directed to the declaration of insolvency and revocation of the bank's charter, without in any way making the plaintiffs ... aware of the pending demise of Freedom." Plaintiffs' Memorandum In Opposition to Comptroller's Motion ("P. Opp. Comptroller") at 2. The Comptroller's motion to dismiss will therefore be considered only with respect to that allegedly wrongful act. Plaintiffs apparently concede the propriety of dismissing the Complaint to the extent that its allegations exceed this.

### A. Comptroller's Motion to Dismiss for Lack of Subject Matter Jurisdiction

Under the doctrine of sovereign immunity, "it is axiomatic that the United States may not be sued without its consent and the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). The United States' sovereign immunity cannot be circumvented by naming officers and employees of the United States as defendants. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460, 93 L.Ed. 1628, *reh'g denied*, 338 U.S. 840, 70 S.Ct. 31, 94 L.Ed. 514 (1949). Insofar as the Complaint seeks "monetary damages against the Comptroller for acts or omissions in carrying out his official duties, this is a suit against the United States, which may not be maintained absent consent by the Government." *Huntington Towers, Ltd. v. Franklin National Bank*, 559 F.2d 863, 869–870 (2d Cir.1977), *cert. denied*, 434 U.S. 1012, 98 S.Ct. 726, 54 L.Ed.2d 756 (1978).

The Comptroller contends that the only potential statutory waiver of sovereign immunity for the type of claim asserted in the Complaint against the Comptroller is the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The FTCA is the exclusive remedy (and thus the sole basis for subject matter jurisdiction) for tort claims against a federal agency or instrumentality. *Edelman v. Federal Housing Administration*, 382 F.2d 594, 596 (2d Cir.1967). The Comptroller argues that for several reasons plaintiffs have no claims under the FTCA, and that this court therefore does not have subject matter jurisdiction over plaintiffs' claim against him.

### 1. *Plaintiffs' noncompliance with FTCA requirements.*

The Comptroller contends that plaintiffs have failed to follow the procedures mandated by the FTCA and that their claim against him is therefore barred. *See Keene Corp. v. United States*, 700 F.2d 836, 841 (2d Cir.), *cert. denied*, 464

U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (FTCA must be strictly construed). First, under the FTCA, claims based on the alleged tortious actions of a federal agency may be brought only against the United States and not against the agency in its own name. 28 U.S.C. § 2679. Second, in order to maintain a tort action against the United States, a party must first file an administrative claim with the appropriate federal agency. 28 U.S.C. § 2675(a). The Comptroller contends that because plaintiffs have satisfied neither of these prerequisites, their claims against him must be dismissed. *See Johnson v. United States,* 788 F.2d 845, 848 (2d. Cir.), *cert. denied,* 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 288 (1986).

### 2. *The applicability of the FTCA's discretionary function and fraud exceptions.*

The Comptroller contends that even if plaintiffs had met the procedural requirements of the FTCA, plaintiffs' claims against him are barred by two exceptions to the FTCA. First, the Comptroller contends that its allegedly tortious failure to notify plaintiffs of Freedom's impending closure falls within the "discretionary function" exception, which provides that the FTCA's waiver of sovereign immunity shall not apply to "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The purpose of this exception is "to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984).

Recently, the Supreme Court applied a two-part test to determine if challenged conduct falls within the discretionary function exception: (1) whether the conduct involved "an element of judgment or choice," and (2) whether the judgment involved "is of the kind that the discretionary function exception was designed to protect." *United States v. Gaubert,* —— U.S. ——, ——, 111 S.Ct. 1267, 1273, 113 L.Ed.2d 335 (1991) (quoting *Berkovitz v. United States,* 486 U.S. 531, 536, 108 S.Ct. 1954, 1958, 100 L.Ed.2d 531 (1988)). The Court stated that the second part of this test is satisfied where the government action is "based on considerations of public policy." *Gaubert,* 111 S.Ct. at 1274 (quoting *Berkovitz v. United States,* 486 U.S. 531, 537, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988)). The Court added:

> When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Gaubert,* 111 S.Ct. at 1274–1275.

In *Gaubert,* the Supreme Court concluded that the agency's conduct fell within the discretionary function exception to tort liability because, *inter alia,* the statutory provisions pertinent to the challenged conduct were not mandatory, the challenged conduct was not governed by formal regulations, the agency possessed broad statutory authority to supervise financial institutions, and the action in question involved the kind of policy judgment that the discretionary function exception was designed to shield. *Gaubert,* 111 S.Ct. at 1277–1278. The Comptroller contends that *Gaubert* mandates the same result here. The Comptroller contends that, as with the challenged conduct in *Gaubert,* the Comptroller's informing or not informing the public of Freedom's expected demise was not sub-

ject to any mandatory rules or formal regulations, and was grounded in considerations of public policy, namely, maintaining the stability of the financial system and preventing runs on infirm banks.

■ In addition, the Comptroller contends that, to the extent that plaintiffs' claims against him constitute claims for the tort of fraud, they are explicitly barred by the fraud exception to the FTCA. 28 U.S.C. § 2680(h) (FTCA shall not apply to any claim arising out of misrepresentation or deceit); *see generally, United States v. Neustadt*, 366 U.S. 696, 81 S.Ct. 1294, 6 L.Ed.2d 614 (1961).

### B. Motion to Dismiss for Failure to State a Claim

■ The Comptroller contends that plaintiffs' claim against him must also be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. An FTCA claim is cognizable only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the [tortious] act or omission occurred." 28 U.S.C. § 1346(b). In other words, "for liability to arise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (quoting *C.P. Chemical Co. v. United States*, 810 F.2d 34, 37 (2d Cir.1987)).

The Comptroller contends that fraudulent concealment is the only tort that might conceivably encompass the sort of conduct complained of by plaintiffs and satisfy the "private person" requirement of the FTCA. To prove fraudulent concealment in New York a plaintiff must establish, "(1) a relationship between the parties that creates a duty to disclose; (2) knowledge of the material facts by the party bound to make such disclosures; (3) nondisclosure; (4) scienter; (5) reliance; and (6) damages." *DuPont v. Brady*, 646 F.Supp. 1067, 1075 (S.D.N.Y.1986), *rev'd on other grounds*, 828 F.2d 75 (2d Cir.1987). The Comptroller

contends that even if plaintiffs could successfully plead the last five elements of fraudulent concealment, they do not, and cannot, plead any facts that would give rise to a duty on the part of the Comptroller to disclose the impending demise or receivership of Freedom. The Comptroller contends that there simply is no such duty. The Banking Act requires notification only after a receiver has been appointed. 12 U.S.C. § 193 (the Comptroller "shall, upon appointing a receiver, cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such association to present the same, and to make legal proof thereof"). *Cf. Davis v. FDIC*, 369 F.Supp. 277, 280 (D.Col.1974) ("We find nothing in the statute or the case law which imposes upon the FDIC a duty to advise the general public on an insured bank's financial condition, be it good or bad"). The Comptroller argues that a duty to notify depositors of an impending bank closure would contravene vital policy considerations because notice might trigger a run on the bank and impede attempts by the government to salvage or save the ailing institution.

### C. Plaintiffs' Reply

Plaintiffs do not attempt to directly rebut the Comptroller's contentions. Rather, plaintiffs suggest, in essence, that the Comptroller's arguments miss their mark because, "[c]ontrary to the claim in [the Comptroller's] memorandum, the plaintiffs' action against [the Comptroller] is not an action in 'fraud'," but an action alleging "failure to act in a judicious manner."

\* \* \*

Plaintiffs fail to demonstrate (1) how they can overcome the bar of sovereign immunity and thereby invoke the subject matter jurisdiction of this court, and (2) that the Comptroller had a duty to inform it of Freedom's impending closure such that failure to do so constituted a legally cognizable harm. I find that the Comptroller prevails in each of the five different arguments described above. Thus for five

different reasons, the Comptroller's motion to dismiss must be granted.

## II. *The FDIC's Motion To Dismiss*

### A. Dismissal for Lack of Subject Matter Jurisdiction

The FDIC, like the Comptroller, advances the argument that it is protected by sovereign immunity and can be sued in tort only via the FTCA. The FDIC contends that owing to plaintiffs' failure to bring a claim within the procedural bounds of the FTCA this court lacks subject matter jurisdiction over the claims against the FDIC.

If, as the FDIC contends, the FTCA is the sole means for pursuing a tort claim against the FDIC, then plaintiffs' failure to comply with FTCA requirements (naming the United States as defendant and filing of an administrative claim) requires dismissal for lack of subject matter jurisdiction. The threshold question raised by the FDIC's position is whether the FDIC is an "agency" of the United States for the purposes of the FTCA, and the FTCA is therefore the exclusive means of pursuing tort claims against it. A number of circuits to consider this question have answered it in the affirmative. *See, e.g., FDIC v. Hartford Ins. Co. of Illinois,* 877 F.2d 590, 592–593 (7th Cir.1989) (FDIC is agency within meaning of FTCA), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 948 (1990); *Gregory v. Mitchell,* 634 F.2d 199, 204 (5th Cir.1981) (FTCA is exclusive jurisdictional basis for tort claims against the FDIC); *Safeway Portland Employees' Federal Credit Union v. FDIC,* 506 F.2d 1213, 1215 (9th Cir.1974) (same); *see also Anderson v. FDIC,* 918 F.2d 1139, 1141 (4th Cir.1990) (FDIC is agency of United States and enjoys sovereign immunity); *Commerce Federal Savings Bank v. FDIC,* 872 F.2d 1240, 1248 (6th Cir.1989) (same); *but cf. Woodbridge Plaza v. Bank of Irvine,* 815 F.2d 538, 542–543 (9th Cir.1987) ("sue-and-be-sued" clause of 12 U.S.C. § 1819 is a general waiver of sovereign immunity from claims brought against the FDIC); *FDIC v. State of New York,* 718 F.Supp. 191, 194–195 (S.D.N.Y.1989) (FDIC is not the United States for the purposes of the Tax Injunction Act), *aff'd, FDIC v. State of New York,* 928 F.2d 56 (2d Cir.1991). The Second Circuit has not yet ruled on this question. This court need not reach it here for, as discussed below, the Complaint against the FDIC must be dismissed for failure to state a claim upon which relief can be granted.

### B. Dismissal for Failure to State a Claim

■ The Complaint asserts that the FDIC tortiously failed to perform its duty to inform plaintiffs of Freedom's impending closure. This contention fails to state a claim for relief against the FDIC, as it did against the Comptroller, for the simple reason that there is absolutely no basis for concluding that the FDIC had such a duty.

■ In addition, plaintiffs charge the FDIC with tortiously failing to inform depositors that FDIC insurance was limited to $100,000. In response the FDIC contends that persons "who deal with the government are expected to know the law," *Heckler v. Community Health Services of Crawford County,* 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984).[2] In addition, the FDIC contends that the required warning which was given—"Each depositor insured up to $100,000"—did in fact adequately warn depositors of the limits of the FDIC insurance coverage.

■ Finally, the FDIC asserts that there is simply no statutory or common law basis for attributing to the FDIC the duty to give warnings to the public about the limits of FDIC coverage beyond the notice given.

---

**2.** The FDIC further points out that the law regarding the $100,000 limit on FDIC insurance coverage is quite explicit and unequivocal. *See* 12 U.S.C. § 1821(a)(1) ("The maximum amount of the insured deposit of any depositor shall be $100,000"); 12 U.S.C. § 1817(i) and 12 C.F.R. § 330 (separate insurance on other accounts in addition to the first $100,000 is available only if depositor holds other accounts in a fiduciary or representative capacity); 12 U.S.C. § 1822(c) and 12 C.F.R. § 330.4(b) (fiduciary or representative capacity of depositor must be disclosed on bank records).

I agree with the FDIC, for each of the asserted reasons, that the Complaint fails to state a tort claim against the FDIC for which relief may be granted.

### C. The Equal Protection Claim Against the FDIC

■ The Second Count of the Complaint briefly alleges an equal protection claim. Complaint ¶ 16.[3] Although this claim is not fleshed out in the Complaint, it appears to assert that when the FDIC resolves a bank insolvency, under some circumstances it reimburses depositors to the full extent of their deposits, while in other circumstances, such as in this case, it reimburses depositors only up to the $100,000 guaranteed by FDIC insurance. This disparate treatment of depositors is alleged to violate equal protection of the laws.

The statutory basis for FDIC's authority to offer financial assistance to an insolvent bank in the form of contributions of funds, as well as loans, deposits, and purchase of assets and assumption of liabilities, is 12 U.S.C. § 1823(c)(1). This provision states that the FDIC may, "in its sole discretion," give an insured bank financial assistance to prevent the default of the bank, to restore a closed bank, or,

> when severe financial conditions exist which threaten the stability of a significant number of insured depository institutions or of insured depository institutions possessing significant financial resources, such action is taken in order to lessen the risk to the [FDIC] posed by such insured [bank] under such threat of instability.

12 U.S.C. § 1823(c)(1)(C). The cost of this assistance may not exceed the cost of liquidating the institution unless the "continued operation of such insured depository institution is essential to provide adequate depository services in its community." 12 U.S.C. § 1823(c)(4)(A).

The grant of financial assistance to a failing bank is but one option open to the FDIC to resolve a bank's insolvency. The FDIC contends that the preferred way of resolving a bank insolvency is by finding a buyer who will purchase the bank's assets and assume its liabilities. However, when no buyer is available, the FDIC may offer financial assistance to a bank under 12 U.S.C. § 1823(c)(1)(C) in order to facilitate a purchase and assumption transaction or to restore the institution's solvency. This latter option may require that the FDIC protect all depositors to the full extent of their deposits and is justified as a means of preventing a significant disruption of the financial system.

■ The appropriate standard of judicial review for economic or social legislation enacted by Congress that is challenged on equal protection grounds is the highly deferential rational-basis test. *See U.S. R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175, 101 S.Ct. 453, 459, 66 L.Ed.2d 368 (1980), *reh'g denied*, 450 U.S. 960, 101 S.Ct. 1421, 67 L.Ed.2d 385 (1981). Under this standard, a classification will be upheld as constitutional if it bears a rational relationship to a legitimate state purpose. The FDIC contends persuasively that the option of giving financial assistance to an insolvent bank pursuant to 12 U.S.C. § 1823(c)(1)(C) survives this test. Certainly, the resolution of bank insolvencies in a cost-effective manner and the prevention of harmful disruptions of the nation's financial system are legitimate state purposes. The grant of authority to give financial assistance to an insolvent bank in some instances but not others, seeks to achieve those purposes "in a manner that is not patently arbitrary or irrational...." *U.S. R.R. Retirement Bd*, 449 U.S. at 177, 101 S.Ct. at 460. The statutory provisions giving the FDIC discretion to reimburse depositors up to the full amount of their deposits in some instances and not others does not constitute a denial of equal protection.

### III. *Claims Asserted Against Freedom Alleged to Create Liability of the FDIC as Receiver*

■ This leaves the issue of claims of tort on the part of Freedom which are

---

**3.** The Complaint alleges violation of "equal protection of the law under Article 3, of the United States Constitution." Presumably, plaintiffs in-

tended to allege a violation of the equal protection component of the due process clause of the fifth amendment.

asserted to create liability on the part of the FDIC as Freedom's receiver. The FDIC demonstrates persuasively that these claims are moot. Each depositor already has a valid claim against the receivership for the *pro rata* share of the full amount of its deposit in excess of $100,000. Those claims are in no way enhanced by basing them on tortious conduct by Freedom. Any judgment would simply entitle plaintiff to a *pro rata* share of the receivership estate which is equal to the right it already has. Accordingly, that claim is dismissed.

### CONCLUSION

The Comptroller's motion to dismiss is granted.

The FDIC's motion to dismiss is granted.

SO ORDERED.