**DAVIDSON PIPE COMPANY, Davidson Pipe Supply Co., Inc., Davidson Oil Country Supply Co., Inc., Specialty Pipe & Tube, Inc., Specialty Pipe & Tube, of Texas Inc., Herman Peter Davidson and Jill Krueger, Plaintiffs,**

v.

**LAVENTHOL AND HORWATH, Finalco Incorporated, Financial Analytics Corporation, Finalco Group, Inc., John F. Olmstead, Jon J. Prager, Lee B. Burnett, Stephen C. Eastham, Krypton Leasing Corporation, Decisions Incorporated and Jeffrey M. Picower, Defendants.**

Nos. 84 Civ. 5192 (LBS), 84 Civ. 6334 (LBS).

United States District Court, S.D. New York.

April 1, 1988.

Gregory .A. Markel, David Dunn, Davis, Markel & Edwards, New York City, for plaintiffs.

William Rand, Coudert Brothers, New York City, for defendants and third-party plaintiffs Finalco, Inc., Financial Analytics Corp., Finalco Group, Inc., John F. Olmstead, John J. Prager, Lee B. Burnett, Stephen C. Eastham.

Allen R. Freedman, Gordon Hurwitz Butowsky Weitzen Shalov & Wein, New York City, for defendants Krypton Leasing Corp., Decisions, Inc., and Jeffrey M. Picower.

Randy M. Liss, John Somoza, Siff Newman Rosen & Parker, P.C., New York City, for third-party defendant Packer, Deislinger & Johnson.

James W.B. Benkard, Davis Polk & Wardell, New York City, for third-party defendant Tenzer, Greenblatt, Fallon & Kaplan.

Gerald Walpin, Eric J. Wallach, Rosenman Colin Freund Lewis & Cohen, New York City, for defendant Laventhol & Horwath.

Richard Marrin, Ford Marrin Esposito & Witmeyer, New York City, for third-party defendant James & Associates, Inc.

## MEMORANDUM · AND ORDER

JAMES C. FRANCIS IV, United States Magistrate.

In this action, the plaintiffs allege that the defendants misrepresented or failed to state material facts in connection with the sale of certain computer tax shelters. The question currently before the Court is whether the plaintiffs' operation of offshore companies not directly related to the computer tax shelters is within the scope of discovery. The plaintiffs have moved for a protective order barring the defendants from seeking documents or taking deposition testimony regarding the offshore companies on the ground that such information bears no relevance to the issues in this litigation.

### Background

The plaintiffs (hereafter collectively referred to as "Davidson") include five linked corporations engaged in the business of selling pipe and related products. Two of the corporate officers and major shareholders are also named individually as plaintiffs. According to the complaint, Davidson began to purchase computer shelters from defendants Finalco, Inc., Financial Analytics Corp., and Finalco Group, Inc. (collectively referred to as "Finalco") in 1976. These transactions were arranged through Finalco's New York agents, defendants Jeffrey M. Picower, Krypton Leasing Corp., and Decisions, Inc. Davidson contends that it entered into these transactions on the recommendation of William Schneck, a member of the board of two of the Davidson companies and a partner at Davidson's accounting firm, Laventhol & Horwath.

A simplied description of the transactions will suffice for purposes of the instant analysis. Finalco would purchase computer equipment and then resell it to Davidson. At the same time, Finalco would assign to Davidson a lease that it had negotiated with an end user of the equipment. Next, Davidson would lease the equipment to Finalco for some period in excess of the end user lease. This arrangement was de-

signed to provide tax benefits to Davidson through depreciation, investment tax credits, and interest deductions. At the same time, the equipment was expected to have some residual value which could be realized by selling it at the end of the leaseback agreement.

However, by 1983 Davidson began to learn that the computer equipment had little residual value, and this had two important consequences. First, Davidson failed to realize the income that it had expected when each of the leaseback agreements expired. Second, in 1984 the Internal Revenue Service challenged the deductions that Davidson had taken on the ground that the transactions lacked economic substance since the equipment had no residual value.

Davidson then commenced the instant litigation, charging that the defendants misrepresented or failed to disclose material facts relating to the residual value and tax risks of the transactions. Davidson contends that this constitutes a violation of sections 12(2) and 17(a) of the Securities Act of 1933, 15 U.S.C. §§ 77l (2) and 77q; section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b); and Rule 10b–5, 17 C.F.R. § 240.10b–5. The plaintiffs further charge the defendants with violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, and state law.

After discovery commenced, the defendants took the deposition of one of Davidson's officers. This witness testified that the plaintiffs created two companies in the Bahamas which generated income through transactions with foreign corporations. As long as that income remained outside the United States it was not taxable here. However, the witness further testified that funds generated by the offshore companies were brought into this country in order to provide "Christmas gifts" consisting of cash payments to employees of Davidson's customers. According to this witness, plaintiffs neither reported these gifts in their tax returns nor filed 1099s forms with the IRS. The defendants argue that the plaintiffs thus committed commercial bribery and, in addition, filed false tax returns and customs declarations.

After a hiatus caused by substitution of counsel for the plaintiffs, discovery resumed. Now the plaintiffs object to disclosure of additional information relating to the offshore companies. Specifically, plaintiffs' counsel directed a second deposition witness—also a Davidson officer—not to answer questions concerning such topics as the purpose for forming the offshore companies, whether the witness had brought funds generated by those companies into this country, whether the witness had declared any income from those corporations on his federal tax returns, and whether he had filed any customs declarations for funds carried into the country.

The defendants argue that the information sought is relevant in two primary respects. First, it may demonstrate the extent of the plaintiffs' sophistication as investors, an issue pertinent to determining whether they relied upon the defendants' alleged misrepresentations. Second, evidence of illegal activity and prior false statements may be instrumental in impeaching the credibility of the Davidson officers and principal shareholders should they testify at trial. The defendants argue further that any objections have been waived because one witness has already testified concerning the offshore companies.

The plaintiffs respond that the operation of the offshore companies bears no relation to computer tax shelters and so could not shed any light on the degree of their sophistication in the types of investments at issue here. The plaintiffs further contend that the information sought could not be used for impeachment, since they do not intend to call the deponent to testify at trial. Even if the requested information might be considered relevant, the plaintiffs argue that its prejudicial nature would far outweigh its probative value, and it would therefore be inadmissible at trial. Finally, they contend that the discovery would be duplicative since one Davidson officer has already testified about the offshore companies.

460

Discussion

### A. *Operation of Offshore Companies*

█ In order to sustain their claims, the plaintiffs must establish reliance upon the defendants' misrepresentations and omissions. *See Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 92–93 (2d Cir.1981); *Drobbin v. Nicolet Instrument Corp.*, 631 F.Supp. 860, 890 (S.D.N.Y. 1986). Such a showing is necessary to demonstrate a causal link between the acts of the defendants and Davidson's decision to engage in the transactions which caused it damage. *See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 61 (2d Cir.1985); *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d at 92–93 & n. 6.

It is not sufficient, however, for Davidson to show merely that it actually relied on the defendants. It must also demonstrate that its reliance was justifiable. *See Hirsch v. du Pont*, 553 F.2d 750, 762–63 (2d Cir.1977); *Drobbin v. Nicolet Instrument Corp.*, 631 F.Supp. at 891. Accordingly, "[t]he sophistication of the plaintiff is relevant both to the adequacy of the defendant's disclosure and to the extent of the plaintiff's reliance on any alleged misrepresentations." *Id.* (citing *Quintel Corp. N.V. v. Citibank, N.A.*, 596 F.Supp. 797, 802 (S.D.N.Y.1984)). A sophisticated investor is held to a higher duty of inquiry, and so may not claim reliance upon misrepresentations which might dupe only the naive investor. Thus, evidence probative of the degree of sophistication of a plaintiff in a securities case is both admissible at trial, *see DuPont v. Brady*, 646 F.Supp. 1067, 1074 (S.D.N.Y.1986), *rev'd on other grounds*, 828 F.2d 75 (2d Cir.1987); *Eichen v. E.F. Hutton & Co.*, 402 F.Supp. 823, 830 (S.D.Cal.1975), and an apt subject for discovery, *see Houlihan v. Anderson–Stokes, Inc.*, 78 F.R.D. 232, 234 & n. 1 (D.D.C. 1978); *Weiner v. Bache Halsey Stuart, Inc.*, 76 F.R.D. 624, 628 (S.D.Fla.1977).

█ The concept of "sophistication," however, is an elastic one. Simply by initiating securities litigation a plaintiff does not expose himself to discovery with respect to the minute details of every transaction he has engaged in. Rather, the probative value of evidence on prior dealings will depend on their relation to the litigated transactions with respect to such factors as similarity of subject matter, degree of complexity, and the extent of reliance on the advice of others in each case. *See DuPont v. Brady*, 646 F.Supp. at 1074; *In re Towner Petroleum Co. Securities Litigation*, M.D.L. No. 607, No. 84–2635 (E.D.Pa. February 21, 1986) [available on WESTLAW, 1986 WL 2443] (plaintiffs' experience with oil and gas tax shelters discoverable, but not experience with tax shelters generally); *Fisher v. Samuels*, No. 84–C–3385 (N.D.Ill. Oct. 24, 1986) [available on WESTLAW, 1986 WL 12330] (discovery of any investments over prior ten years not limited to tax advantaged investments). If, for example, a prior investment involved the simple purchase of stock selected by the plaintiff's broker for a discretionary account, it would seem to have little relevance to the degree of the plaintiff's sophistication for the purposes of engaging in a complex series of tax shelter transactions.

On the other hand, where there is an adequate nexus with the investments at issue in the litigation, prior transactions will be pertinent to the question of sophistication. In *DuPont v. Brady*, for instance, the court concluded that the plaintiff had not relied on the defendant's failure to provide material information. "This is demonstrated by duPont's history of agressive and comparable investing solely for tax avoidance purposes—a history which duPont pursued often on his own initiative." 646 F.Supp. at 1074; *see also Finalco, Inc. v. Keetch*, No. 85–1286 (4th Cir. March 17, 1986) (investor's experience in prior tax sheltered real estate transactions foreclosed claim that subject transactions were fraudulently induced).

In this case, the operations of the offshore companies are sufficiently related to the computer tax shelters at issue to warrant discovery. Offshore companies are generally created in large part for the tax advantages that they offer. *See Garlock, Inc. v. Commissioner of Internal Revenue*, 489 F.2d 197, 200–01 (2d Cir.1973),

*cert. denied*, 417 U.S. 911, 94 S.Ct. 2608, 41 L.Ed.2d 215 (1974). The plaintiffs, who were not merely passive investors in the offshore entities here, may thus have demonstrated the extent of their experience in tax shelters and the economic risks they were willing to take to defer or avoid taxation.

The offshore companies did, of course, create different tax advantages from those generated by the computer leaseback arrangements. Nevertheless, the transactions need not be identical in order to be pertinent to the plaintiffs' degree of sophistication. That is particularly true here, where Davidson claims that the defendants provided misinformation regarding the residual value of the tax sheltered investments. The defendants could use the requested information to prove that Davidson's prior investment history shows that it was predominently interested in the tax advantages of such transactions and not in their residual value.[1] Accordingly, information about the creation and operation of the offshore companies is relevant and shall be subject to disclosure.

## B. *Prior Acts Evidence*

■ Not every aspect of the operation of the offshore companies may be germane to the plaintiffs' sophistication or their desire for tax advantaged transactions. Allegations that funds generated by the offshore entities were illegally imported into the United States by the plaintiffs and used for purposes of commercial bribery are too remote from the computer tax shelters at issue here to be discoverable in connection with the merits of Davidson's claims. Accordingly, the defendants argue that discovery on these issues may lead to facts affecting the plaintiffs' credibility and provide evidence to be used to impeach the plaintiffs' testimony at trial.

By its terms, Rule 26(b)(1) of the Federal Rules of Civil Procedure authorizes only that discovery "which is relevant to the subject matter involved in the pending actions." Occasionally courts have construed this language literally to foreclose discovery of information useful only for impeachment. *See Wharton v. Lybrand, Ross Brothers and Montgomery*, 41 F.R. D. 177, 179 (E.D.N.Y.1966). But the far more common and logical analysis is that "[i]nformation showing that a person having knowledge of discoverable facts may not be worthy of belief is always relevant to the subject matter of the action." 8 Wright & Miller, *Federal Practice and Procedure: Civil* § 2015 (1970). *See also Coyne v. Houss*, 584 F.Supp. 1105, 1106–07 (E.D.N.Y.1984); *Independent Productions Corp. v. Loew's, Inc.*, 22 F.R.D. 266, 271 (S.D.N.Y.1958); *Broadway & Ninety–Sixth St. Realty Co. v. Loew's Inc.*, 21 F.R.D. 347, 360 (S.D.N.Y.1958); 4 *Moore's Federal Practice*, ¶ 26.56[1] (2d ed. 1983). Therefore, "[d]iscovery is commonly allowed in which the discovering party seeks information with which to impeach witnesses for the opposition." 8 Wright & Miller, *supra* § 2015.

■ The plaintiffs note, however, that in order for information to be discoverable, there must be a reasonable likelihood that it will lead to admissible evidence. They then argue that because Rule 608(b) of the Federal Rules of Evidence precludes the introduction of extrinsic evidence for purposes of impeachment, there is no possibility that the information sought will lead to admissible evidence. This contention fails for two reasons. First, Rule 608(b) applies only to the introduction of extrinsic evidence. Although prior acts may not be independently proven solely for purposes of impeachment, they may serve as the

---

1. The plaintiffs note that there is no strict dichotomy between these two considerations, since a transaction will only be entitled to tax benefits if it has economic substance as demonstrated in part by the residual value. Thus, say the plaintiffs, the defendants can hardly argue that Davidson had *no* interest in residual value. Although this observation is correct, it does not address the relative value that Davidson placed on tax benefits and residual value. It could be the case that Davidson sought only the bare minimum residual value necessary for the transactions to qualify for tax benefits. The plaintiffs' motivation, as demonstrated in part by their prior tax shelter dealings would thus be probative of the extent of their reliance on the defendants' representations.

foundation for cross-examination of a witness, *see* Fed.R.Evid. 608 advisory committee's note; *United States v. Senak*, 527 F.2d 129, 144–45 (7th Cir.1975), *cert. denied*, 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed. 2d 758 (1976), and they are therefore discoverable on that basis. *See United States v. International Business Machines, Corp.*, 66 F.R.D. 215, 218 (S.D.N.Y.1974). Second, Rule 608(b)'s bar on extrinsic evidence relating to credibility is not absolute: where the prior acts are not denied by the witness, evidence relating to them may be introduced. *See United States v. Zandi*, 769 F.2d 229, 236 (4th Cir.1985); *Carter v. Hewitt*, 617 F.2d 961, 970 (3d Cir.1980). Therefore, until it is known how the potential witnesses might testify regarding the prior acts, no determination can be made regarding admissibility of related extrinsic evidence.

■ Nevertheless, the plaintiffs contend that the witness currently sought to be deposed about these issues will not testify at trial and so should be exempt from being questioned now about matters relevant solely to credibility. But the parties have not entered into any formal stipulation precluding this witness' testimony at trial. Moreover, several of Davidson's officers were purportedly involved in the activities in question, and at least some of them are likely to testify at trial. Therefore, it is appropriate to seek impeachment evidence from sources other than the witness against whom it might be used at trial.

■ Defining the scope of discovery related to impeachment is troublesome: the areas to be probed to test a witness' credibility are virtually limitless. In *Burns v. Phillips*, 50 F.R.D. 187 (N.D.Ga.1970), the court suggested that "[i]f usefulness for purposes of impeachment were accepted as the criterion of relevancy, the relevancy test would for all practical purposes be worthless." *Id.* at 188. There the court abandoned any effort to define the limits of credibility-related disclosure and simply barred discovery that was not directed to the substantive claims asserted in the litigation.

The better approach is to limit discovery for purposes of impeachment in the same way that other discovery is constrained: by determining whether it is reasonably likely to lead to admissible evidence. In the context of discovery for impeachment purposes, this means deciding whether disclosure may reveal information affecting the credence afforded to a witness' trial testimony. The five factors discussed below provide a framework for analyzing whether a course of discovery meets this test.

The first and most obvious criterion is that the prior acts in question must demonstrate a propensity for deception. Thus, Rule 608(b) of the Federal Rules of Evidence specifically authorizes cross-examination of a witness concerning prior acts "if probative of truthfulness or untruthfulness." As Judge Weinstein has observed, the commentators vary somewhat in enumerating the precise acts that would demonstrate a tendency to lie. 3 *Weinstein's Evidence* ¶ 608[05] at 608–43—608–47 (1987). Nevertheless, the principle is clear in most instances: acts such as perjury reflect on the witness' truthfulness, acts such as communication of threats or the witness' failure to pay debts do not. *See United States v. Lanza*, 790 F.2d 1015, 1020 (2d Cir.), *cert. denied*, 479 U.S. 861, 107 S.Ct. 211, 93 L.Ed.2d 141 (1986) (debts); *West v. Love*, 776 F.2d 170, 175–76 (7th Cir.1985) (threats).

A second consideration is the extent to which the prior act, even if deceptive, occurred in a context where there is a premium on veracity. On one hand, sworn statements to a court or government agency, employment applications, and even applications for credit carry an obligation for truthfulness, so that falsehoods in such situations may be probative of a lack of credibility. *See United States v. Sullivan*, 803 F.2d 87, 90–91 (3d Cir.1986), *cert. denied*, 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed. 2d 841 (1987) (false tax returns); *United States v. Sperling*, 726 F.2d 69, 75 (2d Cir.), *cert. denied*, 467 U.S. 1243, 104 S.Ct. 3516, 82 L.Ed.2d 824 (1984) (false credit card applications); *United States v. Cole*, 617 F.2d 151, 153–54 (5th Cir.1980), *cert. denied*, 452 U.S. 918, 101 S.Ct. 3055, 69 L.Ed.

2d 422 (1981) (false excuses for absence from employment); *Lewis v. Baker*, 526 F.2d 470, 475–76 (2d Cir.1975) (falsehood in employment application). On the other hand, where a prior incident of deception is considered unimportant or excusable, it may have no impact on the credibility of a witness' trial testimony. It is inconceivable, for example, that a physician testifying on unrelated issues could be cross-examined about instances where he or she had lied to a patient whose health would have been endangered by the truth. *See* S. Bok, *Lying: Moral Choice in Public and Private Life* at 220–41 (1978). Similarly, in *United States v. Rovetuso*, 768 F.2d 809, 815–17 (7th Cir.1985), *cert. denied*, 474 U.S. 1076, 106 S.Ct. 838, 88 L.Ed.2d 809 (1986), the court precluded cross-examination of a witness concerning his purported activities as a Panamanian secret agent; presumably, any deception engaged in in that capacity was at least officially sanctioned.

The lapse of time between the prior act and the trial testimony should also be taken into account. Thus, "a thirty-year old misstatement about age in an application for working papers may be viewed differently from a continuing series of false statements in the witness' tax returns for the past five years." 3 *Weinstein's Evidence*, ¶ 608[05] at 608–50 (1987). Similarly, in a libel action a witness' prior false statements were admitted in evidence in part because "[t]he time period of the prior statements was closely related to publication [of the libelous material] at issue here." *Guccione v. Hustler Magazine, Inc.*, 632 F.Supp. 313, 320 (S.D.N.Y.), *rev'd on other grounds*, 800 F.2d 298 (2d Cir. 1986), *cert. denied*, 479 U.S. 1091, 107 S.Ct. 1303, 94 L.Ed.2d 158 (1987).

The fourth factor to be considered is the relationship between the subject matter of the prior deceptive act and that of the instant litigation. As the connection becomes more attenuated, so does the probative value of the evidence. For example, in

*United States v. Cox*, 536 F.2d 65, 71–72 (5th Cir.1976), the court excluded evidence of the defendants' prior violation of the immigration laws—even though deception was involved—in a prosecution for importing narcotics. *Cf. United States v. DiPaolo*, 804 F.2d 225, 230 (2d Cir.1986) (extrinsic evidence of false anonymous phone call by witness properly excluded; cross-examination permitted). On the other hand, prior deception in circumstances similar to those presented in the current litigation are most telling because they demonstrate the witness' untrustworthy behavior when confronted with analogous motives, risks, and potential benefits. *See United States v. Terry*, 702 F.2d 299, 316 (2d Cir.), *cert. denied*, 461 U.S. 931, 103 S.Ct. 2095, 77 L.Ed.2d 304 (1983) (criticism of expert witness' testimony at prior trial relevant to credibility of testimony at current trial).[2]

The final factor in determining whether credibility-related discovery is appropriate is whether the party seeking disclosure has a foundation for its inquiry. This consideration is not concerned with the admissibility of the evidence sought; rather, it involves the question of whether there is a reasonable likelihood that any pertinent evidence will be elicited. It would obviously be intolerable for the party seeking disclosure to embark on an examination of every statement ever made by a witness in the hope of unearthing a falsehood. *See In re Fontaine*, 402 F.Supp. 1219, 1221 (E.D.N.Y.1971). To justify an inquiry into facts relevant solely to credibility, the party seeking discovery must therefore have a factual basis for believing that prior acts of deception will be revealed.

■ By applying each of these factors to the discovery in question here, it becomes apparent that the defendants are entitled to inquire into the possibility that the plaintiffs falsified tax returns or customs declarations in the course of their operation of the offshore companies. If

---

2. Ironically, especially when the witness is a criminal defendant, the similarity of the prior act to the current charges may require the exclusion of evidence of the prior act because of its potential prejudicial impact. However, this is a separate analysis and does not diminish the value that such evidence would have for impeachment purposes if it were otherwise admissible.

proven, such facts would clearly bear on the plaintiffs' credibility. Such acts involve deception and so are probative of a lack of trustworthiness. They were committed reasonably recently and in circumstances where there was a legal obligation for truthfulness. Like the subject matter of this litigation, they involved the plaintiffs' business dealings. Finally, the information already divulged by one of Davidson's officers during deposition testimony provides the foundation for believing that relevant information may be elicited from other witnesses.

■ By contrast, the allegations of commercial bribery are not sufficiently probative of credibility to warrant further discovery. There is a basis for suspecting that evidence of improper payments might be disclosed, and the acts are sufficiently recent and business-related. However, bribery is not an act involving deception and so is of little value for impeachment. *See United Staes v. Bocra,* 623 F.2d 281, 287–88 (3d Cir.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980); *United States v. Vinson,* 606 F.2d 149, 155–56 (6th Cir.1979), *cert. denied,* 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *United States v. Young,* 567 F.2d 799, 803 (8th Cir.1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786 (1978). Rather, it is the mirror image of robbery: while the robber improperly obtains benefits by threat of force, the briber does so by promise of reward. Not all dishonesty is deceptive, and to hold otherwise would remove all limits on the admissibility of prior bad acts for purposes of impeachment. *See* 3 *Weinstein's Evidence,* ¶ 608[05] at 608–47—608–49.[3]

### C. *Prejudice*

■ Even if the requested information meets the technical requirements for ad-missibility, the plaintiffs argue that it should be excluded under Rule 403 of the Federal Rules of Evidence because its probative value would be far outweighed by its prejudicial impact. Yet such a determination is to be made by the trial court exercising its discretion on the basis of a fully developed record. *See Coyne v. Houss,* 584 F.Supp. at 1108. Here, where no motion *in limine* has been made to preclude such evidence at trial, wholesale limitation of the defendants' ability to elicit relevant information is unwarranted. *See G.D. Searle & Co. v. Interstate Drug Exchange, Inc.,* 117 F.R.D. 495, 499 (E.D.N.Y. 1987).

### D. *Duplicative Discovery*

■ The plaintiffs also contend that further discovery would be duplicative because one witness has already testified fully about the operations of the offshore companies. Yet there is no guarantee that the information available to or recalled by that one witness is coextensive with the potential testimony of other witnesses. Furthermore, even if it were, the value of such information for purposes of impeachment is far greater if it has been elicited from the witness who will testify at trial and so be cross-examined on the basis of his own prior statements. Because it is not known who will testify on behalf of the plaintiffs at trial, there is no basis for curtailing questioning of different deponents on this same subject matter.[4]

### E. *Harassment*

■ Finally, the plaintiffs object to the requested discovery on the ground that it constitutes harassment. They point to Disciplinary Rule 7–105 which states, "A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil

---

**3.** Of course, anyone committing a dishonest act may engage in deception to avoid detection. Such deception, if it meets the criteria set forth above, may be subject to discovery. Thus, although the alleged bribery here is not probative of credibility, the filing of false customs declarations in furtherance of such acts would be.

**4.** By the same token, each witness may have both different information and different interests. Therefore, the failure of the first witness to object to questioning concerning the offshore companies hardly constituted a waiver of the plaintiffs' right to object with respect to questioning of other witnesses.

matter." Yet the relevance of the disclosures sought here belies any suggestion that the defendants are acting "solely" to gain an improper advantage. Moreover, there is no evidence that the defendants have ever threatened to provide the information obtained to any law enforcement agency. It would be perverse indeed if acts became immune from discovery in civil litigation merely because they were potentially criminal in nature.

In a similar vein, the plaintiffs argue that the defendants obtained the basic information from which they formulated their inquiries through an improper breach of confidence by Laventhol & Horwath, Davidson's accounting firm and one of the defendants. But because no accountant-client privilege is recognized in the federal courts, *see United States v. Arthur Young & Co.*, 465 U.S. 805, 817, 104 S.Ct. 1495, 1502, 79 L.Ed.2d 826 (1984), it would be inappropriate for this Court to enforce accountants' ethics by excluding evidence or curtailing discovery. If an ethical breach has occurred, Davidson must seek its remedy from the appropriate disciplinary organ within the accounting profession.

### F. *Mechanics*

█ Because of the sensitive nature of the information sought, the plaintiffs request that discovery on these issues, if allowed, be held in abeyance until the end of the discovery period. Yet there is no basis for believing that developments between now and the close of discovery will obviate the need for disclosure of this information. In addition, it would be disruptive to recall deposition witnesses on the eve of the discovery deadline, even if the examinations then could be clearly delimited to the issues concerning the offshore companies.

A better approach is to limit dissemination of the potentially harmful information by means of a confidentiality order. The parties shall therefore proceed with discovery on these issues, subject to a protective order limiting disclosure of confidential information to counsel for the parties.

### Conclusion

For the reasons set forth above, the defendants are entitled to pursue discovery concerning the plaintiffs' operation of the offshore companies as well as allegedly false tax returns and customs declarations submitted in connection with those operations. Allegations of commercial bribery are not sufficiently relevant to credibility and shall not be subject to discovery. Within ten days of the date of this order, the parties shall submit a stipulation and order of confidentiality, or, failing agreement, their respective proposals for such an order.

SO ORDERED.