**In re The AES CORPORATION SECURITIES LITIGATION.**

**No. 92 Civ. 4640 (WCC).**

United States District Court,
S.D. New York.

April 22, 1994.

---

Sporn, Joel P. Laitman, of counsel), for plaintiffs.

Chadbourne & Parke, New York City (Donald I. Strauber, Eric D. Welsh, Brian A. Miller, of counsel), for defendants the AES Corp., Roger W. Sant, Dennis W. Bakke, Robert F. Hemphill, Jr., Frank Jungers, Henry R. Linden, C. Arthur Rolander, Russell E. Train, Thomas I. Unterberg, Robert H. Waterman, Jr. and Barry J. Sharp.

Davis Polk & Wardwell, New York City (Frank S. Mosley, of counsel), for defendants Donaldson, Lufkin & Jenrette Securities Corp., J.P. Morgan Securities, Inc. and Unterberg Harris, L.P.

### OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

This class action suit is brought by plaintiffs on behalf of all individuals who purchased securities of the AES corporation ("AES") between June 25, 1991, and June 23, 1992, pursuant to two public offerings. The First Consolidated and Amended Class Action Complaint ("Complaint") alleges violations of Sections 11 and 12(2) of the Securities Act of 1933; Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 promulgated thereunder; and common law fraud against AES, a number of its officers and directors, and the investment banking firms which underwrote the public offerings.

On June 25, 1993, this Court granted in part and denied in part defendants' motion to dismiss. That opinion details the alleged facts in this case, familiarity with which is presumed.

The case is presently before the Court on defendants' motion to compel certain documents and responses to interrogatories from members of the plaintiff class and third party WHB/Wolverine Asset Management ("WHB"). For reasons stated below, defendants' motion is granted.

### BACKGROUND

The relevant facts for purposes of the instant motion are as follows. AES is a corporation which constructs and operates co-generation power facilities. The Complaint alleges that in order to raise funds from investors through two public offerings, AES mis-

Abbey & Ellis (Jill S. Abrams, Arthur N. Abbey, of counsel), Schoengold & Sporn, Co-Lead Counsel, New York City (Samuel P.

represented that it was a leader in the area of environmental compliance; that it was committed to the "Shared Values" of "integrity," "fairness," and "social responsibility;" and that its financial condition was positive. Compl. ¶ 2. The Complaint further alleges that plaintiffs relied on these misrepresentations and on the "integrity of the market" when purchasing AES securities, and that "[h]ad Plaintiffs and the members of the Class known the truth concerning the misrepresented and omitted facts described herein, they would not have purchased them at the prices that were paid." Compl. ¶ 126.

Defendants are seeking discovery concerning plaintiffs' past securities investments. Specifically, defendants seek to compel plaintiffs to produce all documents reflecting any security owned, held, or sold by or for the account of any plaintiff from January 1, 1988 to 1992,[1] and to identify any broker or other financial advisor who has knowledge of any of plaintiffs' past securities investments.[2] Plaintiffs object to these requests as irrelevant, but have offered to produce documents concerning their investments in companies "in the same business" as AES.

Defendants also seek to compel third party WHB, which was identified by certain plaintiffs as an investment advisor, to produce all documents reflecting any security held by plaintiffs from January 1, 1988 to 1992, and any documents reflecting the "nature, objectives or investment criteria" of these accounts.[3] WHB joins plaintiffs' objections.

## DISCUSSION

Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure, parties may obtain discovery "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Rule 26(b)(1) "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978) (citing *Hickman v. Taylor,* 329 U.S. 495, 501, 67 S.Ct. 385, 388, 91 L.Ed. 451 (1947)).

■ Defendants argue that plaintiffs' past investments are indicative of plaintiffs' sophistication, which is relevant to two elements under Section 10(b) and Rule 10b–5: plaintiffs' reliance on the alleged misrepresentations, and the materiality of these misrepresentations. Defendants contend that they need to discover plaintiffs' past securities investments in order to procure evidence that, contrary to the Complaint's allegations, (1) plaintiffs' investment decisions were not in fact induced by AES's statements concerning its "Shared values" and environmental compliance; (2) plaintiffs did not in fact rely on the integrity of the market for the AES securities; and (3) such statements were not material to the average investor.

Plaintiffs argue that while past investments in companies in the same industry as AES may be relevant, all other investments are irrelevant to the instant case. They contend that if defendants want to rebut plaintiffs' alleged reliance, "the simplest way to do so is to ask plaintiffs, at their depositions, what they relied on in making their investments in other companies." Plaintiffs' Memorandum of Law in Opposition at 2.[4]

■ It is beyond question that reliance is an essential element of a Rule 10b–5 cause of action. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988). In a class action complaint, plaintiffs may allege that class members directly relied on defendants' misrepresentations, or they may allege that they relied on the integrity

---

**1.** While defendants originally requested documents concerning plaintiffs' past investments from 1988 "to the present," they have now limited their request to the four-year period from 1988 to 1992.

**2.** Defendants seek to compel plaintiffs to produce all documents responsive to Request No. 16 of Defendants' First Request for Production of Documents to All Plaintiffs, and to answer Interrogatory No. 2 of Defendants' First Set of Interrogatories to All Plaintiffs.

**3.** Defendants seek to compel production of documents responsive to Request Nos. 7 and 8 in the schedule attached to Defendants' *Subpoena Duces Tecum* served on WHB.

**4.** While plaintiffs make this suggestion, they do not argue that the production of the requested documents would be unduly burdensome.

of the market, i.e., the "fraud on the market" theory. *Id.* at 247, 108 S.Ct. at 991. The fraud on the market theory is based on the premise that "an investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price." *Id.* As most public information is reflected in market prices, class members are entitled to a rebuttable presumption of reliance on materially misleading statements.[5] *Id.*

In the instant case, the Complaint alleges both traditional direct reliance and fraud on the market theory.[6]

■ We agree with other courts that when direct reliance is alleged in the Complaint, plaintiffs' sophistication is relevant to the merits of these allegations and a defense of non-reliance. *E.g., In re Harcourt Brace Jovanovich, Inc. Sec. Litig.,* 838 F.Supp. 109, 114 (S.D.N.Y.1993); *Forstmann Leff Assoc., Inc. v. American Brands, Inc.,* 1990 WL 546187 at * 1, 1990 U.S.Dist. LEXIS 7747 at *1 (S.D.N.Y.), *aff'd without op.,* 923 F.2d 845 (2d Cir.1990); *Davidson Pipe Co. v. Laventhol and Horwath,* 120 F.R.D. 455, 460 (S.D.N.Y.1988); *Quintel Corp., N.V. v. Citibank, N.A.,* 596 F.Supp. 797, 801–02 (S.D.N.Y.1984). That is not to say that a sophisticated investor is precluded from recovering under the securities laws. Rather, as explained in *Davidson:*

> A sophisticated investor is held to a higher duty of inquiry, and so may not claim reliance upon misrepresentations which might dupe only the naive investor. Thus, evidence probative of the degree of sophistication of a plaintiff in a securities case is both admissible at trial ... and an apt subject for discovery.

120 F.R.D. at 460 (citations omitted); *see also Quintel,* 596 F.Supp. at 801–02 ("Sophisticated investors are entitled to the protection of Section 10(b).... However, [sophistication] is relevant to the adequacy of disclosure ... and the extent of [the investor's] reliance...."). Because the discovery of prior investments is reasonably calculated to lead to evidence concerning plaintiffs' sophistication in the marketplace, such documents are discoverable.[7]

Plaintiffs suggest that this line of authority is inapplicable to a class action, because class members are entitled to a presumption of reliance under the fraud on the market theory. At least two courts disagree with this argument, explaining that the presumption of reliance is rebuttable. *Harcourt,* 838 F.Supp. at 114 ("It is axiomatic under *Basic* that non-reliance on the integrity of the market is critical in rebutting the presumption of reliance in a fraud on the market case."); *Feldman v. Motorola, Inc.,* 1992 WL 137163 at *1–2, 1992 U.S.Dist. LEXIS 8157 at *2–3 (N.D.Ill.1992) (when securities fraud class action complaint alleges fraud on the market, "this court agrees with defendants that the brokerage statements are relevant to the merits of plaintiffs' federal securities law claim"). We need not reach this issue because in the instant case plaintiffs allege *both* fraud on the market and traditional direct reliance. Thus defendants must rebut not only the presumption of reliance, but the direct allegations as well, to which we find sophistication relevant.

Plaintiffs cite a line of cases for the proposition that "individual questions of reliance are not appropriate in determining whether

---

5. The theory was has been explained as follows: The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business.... Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.... The causal connection between the defendants' fraud and the plaintiffs' purchase of stock in such a case is no less significant than in a case of direct reliance on misrepresentations.
*Basic,* 485 U.S. at 241–42, 108 S.Ct. at 988–89 (citing *Peil v. Speiser,* 806 F.2d 1154, 1160–61 (3d Cir.1986)).

6. Defendants contend that plaintiffs cannot assert the fraud on the market theory because the instant case involves an initial public offering and a debenture offering—not an open and developed securities market. It is unnecessary for us to decide this issue for purposes of the instant motion.

7. Of course, as also pointed out in *Davidson,* a plaintiff should not be exposed to the "minute details of every transaction he has engaged in" simply by filing a complaint. 120 F.R.D. at 460. In the instant case, plaintiffs have not argued that complying with defendants' requests would be unduly burdensome.

class action is proper, and thus are not sufficient to defeat class certification." Plaintiffs' Memorandum of Law in Opposition at 4 (citing *In re Boardwalk Marketplace Sec. Litig.,* 122 F.R.D. 4, 7 (D.Conn.1988); *Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 198 (S.D.N.Y. 1986); *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 98 (S.D.N.Y.1981); *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir.1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969)). First, it is not at all clear that sophistication is never relevant for purposes of class certification.[8] But even assuming this to be true, our holding today is not to the contrary. The cases cited by plaintiffs involved whether sophistication was relevant for purposes of defeating class certification. By contrast, the issue in the instant case is whether sophistication is relevant to rebutting plaintiffs' claim of reliance at trial. *See Feldman,* 1992 WL 137163 at *1–2, 1992 U.S.Dist. LEXIS 8157 at *3 (brokerage statements of class members are relevant to defense of non-reliance; whether they are relevant for class certification is separate issue). Our holding today that sophistication is relevant for merits discovery has no bearing on whether sophistication is sufficient to defeat certification of the instant class.

### CONCLUSION

For the foregoing reasons, defendants' motion to compel is granted. Plaintiffs are ordered to produce the documents requested for the years 1988 to 1992 within 30 days of this opinion.

**SO ORDERED.**

---

**8.** *Compare Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 198 (S.D.N.Y.1986) ("[W]here as here, a proposed class representative did not rely on the allegedly misleading proxy statement or on the integrity of the market, the proposed representative is subject to unique defenses and may not represent the class."); *Weintraub v. Texasgulf Inc.,* 564 F.Supp. 1466, 1471 (S.D.N.Y.1983) (class certification denied where proposed class representative was "sophisticated speculative trader whose unusual trading activities will give rise to unique defenses"); *Kline v. Wolf,* 88 F.R.D. 696, 700 (S.D.N.Y.1981), *aff'd in part,* *vacated on other grounds,* 702 F.2d 400 (2d Cir. 1983) (class certification denied where proposed class representative was speculative trader who did not rely on the market), *with Fisher v. Plessey Co.,* 103 F.R.D. 150, 160 (S.D.N.Y.1984) (Conner, J.) (certifying class and rejecting defendants' argument that plaintiff was atypical because he was "trained as a lawyer, reads the *Wall Street Journal,* and 'owns many types of securities' "); *Cohen v. Long Island Lighting Company,* 1986 WL9961 (E.D.N.Y.1986) ("Sophistication is, indeed, irrelevant" to typicality requirement of class certification).